IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| UNITED STATES OF AMERICA | |
|---|---|
| v. | Case No. 1:19-mj- 159 |
| DARNELL EDWARD STEWART JR., | |
| Defendant. | |

### AFFIDAVIT IN SUPPORT OF A
### CRIMINAL COMPLAINT AND ARREST WARRANT

I, Stephen L. Smith, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I submit this affidavit in support of a criminal complaint and arrest warrant for DARNELL EDWARD STEWART JR. ("STEWART") for conspiring to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since 2014. Prior to my appointment with the ATF, I was a sworn law enforcement officer in the Commonwealth of Virginia for over four years. I am currently assigned to the ATF Falls Church Group II Field Office, an enforcement group, responsible for investigating violent crime, gangs, armed drug trafficking and other firearm related violations. In my capacity as a law enforcement officer, I have investigated individuals for the illegal possession and distribution of controlled substances.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### Background on the Investigation

4. In December of 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and the Drug Enforcement Administration ("DEA") began investigating an armed drug trafficking organization ("DTO") operating within the District of Maryland. One of the members of the DTO was a resident of Alexandria, Virginia, within the Eastern District of Virginia. Members of the DTO distributed cocaine to residents of the Eastern District of Virginia, in addition to residents of Maryland.

5. Beginning in December 2018 and continuing to April 5, 2019, law enforcement conducted numerous controlled purchases of cocaine and cocaine base from distributors associated with the DTO, utilizing confidential informants. These purchases resulted in law enforcement obtaining approximately 619 grams of suspected cocaine HCL and 33 grams of suspected cocaine base. Law enforcement also coordinated the purchase of a firearm from an individual linked to the DTO, along with 125 grams of suspected cocaine in one transaction.

6. During the week of April 1, 2019, search warrants were issued in the Eastern District of Virginia and the District of Maryland related to the DTO. These search warrants targeted residences of members of the DTO, along with a jointly operated storage location, or "trap house." These searches resulted in the seizure of additional quantities of cocaine HCL, marijuana, multiple firearms and large quantities of US currency. Several DTO members were interviewed as part of these searches.

7. During the course of the executions of the search warrants referenced above, a subject was detained related to the existing investigation. The subject ("CI-1") agreed to cooperate with law enforcement. CI-1 is a convicted felon, s/he is facing drug and firearms violations in the Eastern District of Virginia. CI-1 agreed to cooperate with law enforcement in the existing investigation in exchange for potential judicial consideration.

8. CI-1 admitted to selling large quantities of cocaine, including 125 gram and 250 gram quantities on multiple occasions to an individual residing in the Eastern District of Virginia. This individual residing in the Eastern District of Virginia became a confidential informant (CI-2), and confirmed that he had a five-year history of purchasing cocaine from CI-1, that he was in fact a resident of EDVa, and that CI-1 would contact CI-2 to arrange cocaine transactions while CI-2 was located in EDVA. CI-2 confirmed that CI-1 knew that CI-2 was conducting drug transactions in EDVa because they discussed traffic coming "over the bridge" from EDVa to Maryland.

9. CI-1 identified a source of his/her cocaine as, "FATHEAD." CI-1 further reported that FATHEAD's phone number was in CI-1's phone, and that number was reported by CI-1 to be (202) 718-5548. Law enforcement utilized law enforcement databases to identify a potential subscriber of that phone number as STEWART. Agents showed CI-1 a photograph of STEWART, and CI-1 positively identified STEWART as "FATHEAD," one of his/her sources of supply for cocaine.

10. CI-1 agreed to place monitored and audio recorded FaceTime calls to STEWART on (202) 718-5548 to order one kilogram of cocaine. CI-1 reported that s/he regularly obtained half and whole kilogram quantities of cocaine from STEWART. CI-1 contacted STEWART, who agreed to meet CI-1 and provide one kilogram of cocaine for $39,000 US currency.

11. CI-1 and STEWART exchanged several FaceTime video calls throughout the afternoon of April 5, 2019, establishing when and where the drug transaction would take place. CI-1 and STEWART agreed to meet in the parking lot of Red Lobster located at 5051 Auth Way, Camp Springs, Maryland. Prior to meeting, STEWART moved the meet location multiple times, but they would eventually agree to meet at the Holiday Inn Express located at 5001 Mercedes Boulevard, Camp Springs, Maryland.

12. Prior to the controlled purchase, CI-1, as well as the vehicle in which CI-1 would travel, were searched for any illegal or unauthorized items, and no illegal items were located. CI-1 was provided several devices, which collectively record and transmit audio and location information, and $39,000 in documented cashier funds.

13. Agents conducting surveillance observed STEWART in a Lexus sedan bearing Maryland registration 8DM6185 in the area of the transaction. Agents observed STEWART as the sole occupant and operator of the vehicle, and that STEWART was wearing a green shirt consistent with the shirt he was wearing during FaceTime video calls. Agents watched STEWART drive to the Holiday Inn and park. At law enforcement direction, CI-1 drove to the Holiday Inn, parked, and then got into STEWART's vehicle. CI-1 provided $39,000 directly to STEWART, who then provided a clear plastic food saver bag containing what appeared to be a one kilogram package of cocaine, wrapped in black.

14. After the transaction, CI-1 was followed by law enforcement to a pre-determined location where agents collected the suspected cocaine. CI-1 and CI-1's vehicle were searched and found to be free of illegal contraband or unauthorized items.

15. After CI-1 departed the transaction location, law enforcement detained STEWART in his Lexus sedan, which was still parked in the Holiday Inn lot. At the time of

4

STEWART's detention, he had the plastic shopping bag containing $39,000 in documented US currency in his lap and appeared to be counting the currency. Agents also seized three Apple iPhones.

16. During a custodial interview, after being advised of his *Miranda* rights, STEWART admitted that he had met his source of supply for cocaine in the same area and obtained the kilogram of cocaine from him. STEWART admitted to providing the same kilogram of cocaine to CI-1, as well as providing CI-1 with cocaine multiple times in the past. STEWART also agreed to open his iPhones for law enforcement to view the contents. One of the phones had the phone number (202) 718-5548 assigned to it, confirming that he was in fact the person with whom CI-1 was communicating. In addition, law enforcement photographed the call log, which showed FaceTime calls between CI-1's phone number and STEWART'S iPhone.

17. The suspected cocaine purchased from STEWART field-tested positive for the presence of cocaine. The weight, including packaging, was 1,151 grams. This cocaine will be submitted to the Drug Enforcement Administration (DEA) Mid Atlantic Laboratory in Largo, Maryland, for further analysis.

## CONCLUSION

18. Based on the foregoing facts, there is probable cause to believe that STEWART and others have conspired to distribute and possess with intent to distribute 500 grams or more of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

19.   For the above reasons, I therefore request an arrest warrant be issued for DARNELL EDWARD STEWART JR. for conspiring to distribute and possession with the intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Respectfully submitted,

_____
Stephen L. Smith
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on April 7, 2019.

/s/
_____
Theresa Carroll Buchanan
The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

6